ALEX L. AND EARLENE POLYAK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2794-88.        Filed March 12, 1990.

Alex Polyak and Earlene Polyak, pro se.
*Carole Meisler,* for the respondent.

## OPINION

GOFFE, *Judge:* This case was heard by Chief Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rules 180, 181, and 182. All section references are to the Internal Revenue Code as amended and in effect for the year in issue unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Chief Special Trial Judge's opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PETERSON, *Chief Special Trial Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the year 1984 in the amount of $945.

The issues to be decided are (1) whether and to what extent petitioners are entitled to a medical expense deduction; and (2) whether petitioners are entitled to a current deduction for repairs made to rental property.

## FINDINGS OF FACT

Petitioners were legal residents of Trenton, Michigan, at the time this petition was filed. Petitioners timely filed a joint Federal income tax return for the year in issue.

Petitioners (Mr. and Mrs. Polyak) owned several rental properties and incurred expenses relating to those properties during 1984. Petitioners also incurred expenses relating to Mrs. Polyak's medical problems in 1984. These expenses included expenditures for prescription medicines, medical insurance premiums, transportation to and from Florida, lodging while in Florida, travel trailer depreciation, tele-

phone expenses, and air conditioners installed in both a travel trailer and petitioners' Michigan home. At issue are the medical deductions petitioners claimed due to these expenses and deductions for expenses relating to rental income.

Mrs. Polyak underwent open heart surgery in 1979. Since that time, she has had continuing coronary artery disease and associated lung problems. She was hospitalized several times after the surgery through 1984, and required an oxygen tank to assist her in breathing. She also suffered from acute arthritis in 1984. Mrs. Polyak's health problems caused her difficulties especially when outdoor temperatures became extreme. She was advised by her doctors in Michigan to seek a warmer climate during the winter months. Because of this advice, Mr. Polyak drove Mrs. Polyak to Florida in the fall of 1983, and flew back to Michigan while Mrs. Polyak remained in Florida throughout the winter months. In April of 1984, Mr. Polyak flew to Florida to drive Mrs. Polyak back to Michigan for the summer. Petitioners then repeated the process in the fall of 1984.

Mrs. Polyak's Florida doctor was a Dr. Herman whom she saw twice during the 5 months she resided in Florida in 1984. The first appointment was in February and was for an upper respiratory infection. The second appointment was in December and was a routine visit for renewal of her medications. Dr. Herman became her physician when she was taken to a hospital emergency room in Florida during 1983. Dr. Herman was covering that emergency room for patients who did not have physicians and treated Mrs. Polyak. Thereafter she continued seeing him; however, he occasionally referred her to specialists as her need arose. Mrs. Polyak's physicians in Michigan did not refer her to any physicians in Florida for medical care.

Mrs. Polyak lived in a travel trailer which was parked at a K.O.A. campground in Palm Beach Gardens, Florida, during the 5 months she resided in Florida in 1984. Petitioners expended $1,426 in rental fees at the campground. The travel trailer was not specially equipped for Mrs. Polyak, although it did have an air conditioner to alleviate her breathing problems. Petitioners also installed

an air conditioner in their home in Michigan some time prior to 1984 to help Mrs. Polyak's medical condition.

Due to her poor health, Mrs. Polyak did not enjoy any significant element of personal pleasure, recreation, or vacation while she spent the winter months in Florida.

Petitioners also claim deductions for expenditures made to rental properties they own. After concessions made at trial by respondent, the only rental expense item in dispute is a $565 expenditure for repair to a bathroom floor in petitioners' New Boston rental property. The bathroom floor was a wooden floor and, due to water damage over the course of many years, the floor had rotted in several places so there was danger of someone falling through. Petitioners had the section of floor that was most damaged cut out and replaced with similar materials.

## OPINION

The first medical expense issue we will decide is the expenditure of $1,426 for Mrs. Polyak's lodging while she was in Florida. Petitioners contend they may claim a medical expense deduction under section 213(d)(2) for Mrs. Polyak's lodging expenses while she resided in Florida.

Respondent contends that in order to itemize lodging expenses as a medical expense under section 213(d)(2), Mrs. Polyak must have been in Florida specifically to be treated by a physician who is working out of a licensed medical care facility.

Section 213(d)(2) was added to the Internal Revenue Code by section 482(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 847-848. Section 213(d)(2) applies to all tax years beginning after December 31, 1983; therefore, it is applicable to the year before us.

This is a case of first impression for this Court. We have not had a prior occasion to interpret and apply section 213(d)(2).

The Supreme Court considers issues of statutory construction from time to time and has set forth our role as follows: "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." *United States*

*v. American Trucking Associations, Inc.,* 310 U.S. 534, 542 (1940).

As early as 1849, Chief Justice Taney stated, "In expounding a statute, we must not be guided by a single sentence or members of a sentence, but look to the provisions of the whole law, and to its object and policy." *United States v. The Heirs of Boisdore',* 49 U.S. (8 Howard) 113, 122 (1849). See *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 51 (1987). Almost 100 years later the Supreme Court added, "But words are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how clear the words may appear on 'superficial examination.'" *Harrison v. Northern Trust Co.,* 317 U.S. 476, 479 (1943). See *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 10 (1976). However, it is well settled that the first step in statutory interpretation is an analysis of the statutory language. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337 (1979).

The Supreme Court summarized the importance of the statutory language as follows:

If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980). Of course, there is no errorless test for identifying or recognizing "plain" or "unambiguous" language. Also, authoritative administrative constructions should be given the deference to which they are entitled, absurd results are to be avoided and internal inconsistencies in the statute must be dealt with. *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643 (1978); *Commissioner v. Brown,* 380 U.S. 563, 571 (1965). We nevertheless begin with the language of the statute. [*United States v. Turkette,* 452 U.S. 576, 580 (1981).]

In our interpretation of section 213(d)(2), we must keep in mind that pieces of new legislation that are "liberalizations of the law in the taxpayer's favor, [and are] begotten from motives of public policy, * * * are not to be narrowly construed." *Helvering v. Bliss,* 293 U.S. 144, 151 (1934).

To facilitate our interpretation of the language of the statute, it is important to note the historical development of the medical expense deduction as it relates to the issue before us.

Section 23(x)[1] of the Internal Revenue Code of 1939, the predecessor of section 213, was interpreted by this Court in *Stringham v. Commissioner,* 12 T.C. 580 (1949), affd. per curiam 183 F.2d 579 (6th Cir. 1950), to allow as a medical expense deduction, lodging expenditures similar to petitioners' in the case before us. In *Stringham v. Commissioner, supra,* the taxpayer's 5-year-old daughter, who suffered from various chronic respiratory ailments, was sent to Arizona from Cleveland, Ohio, to seek a more favorable climate. There is no indication that a physician was consulted while the child was in Arizona. We found the lodging expenses to be deductible because the expenses were "clearly incurred primarily for and essential to the cure and mitigation of the daughter's illness." *Stringham v. Commissioner, supra* at 586.

The Internal Revenue Code of 1954 retained the language of section 23(x) in section 213(e); however, Congress added section 213(e)(1)(B) which provided that transportation expenses incurred primarily for and essential to medical care are deductible medical expenses. The rationale in *Stringham v. Commissioner, supra,* was reversed by the Supreme Court in *Commissioner v. Bilder,* 369 U.S. 499 (1962),[2] and lodging expenditures were disallowed as a medical expense deduction in the interpretation of section 213(e)(1)(B).

The facts in *Commissioner v. Bilder, supra,* are similar to the facts in the case before us. The taxpayer resided in Newark, New Jersey, and suffered from chronic heart ailments having suffered four heart attacks during the previous 8 years. He was advised by a heart specialist to spend the winter season in a warm climate. The taxpayer, his wife, and their child thereafter spent the winter months in Fort Lauderdale, Florida, in a rental apartment. In applying section 213(e)(1) to these facts, the Supreme Court looked to the House and Senate committee reports for guidance. The committee reports from the 1954 legislation state:

---

[1]Sec. 23(x) provides in pertinent part: The term "medical care," as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance).

[2]*Bilder v. Commissioner,* 33 T.C. 155 (1959), vacated and remanded 289 F.2d 291 (3d Cir. 1961), revd. 369 U.S. 499 (1962).

The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically excludes deduction of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. * * * [H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A60 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 219-220 (1954).]

In applying section 213(e)(1), Justice Harlan stated: "The Committee Reports foreclose any reading of that provision which would permit this taxpayer to take the rental payments for his Florida apartment as 'medical care' deductions." *Commissioner v. Bilder, supra* at 505. E.g., *Rose v. Commissioner,* 52 T.C. 521 (1969), affd. per curiam 435 F.2d 149 (5th Cir. 1970); *Carasso v. Commissioner,* 34 T.C. 1139 (1960), affd. 292 F.2d 367 (2d Cir. 1961).

The next substantive change in section 213(e) (redesignated as section 213(d) by the Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 421) occurred when Congress passed the Deficit Reduction Act of 1984, *supra,* and added new section 213(d)(2). This provides that in certain situations, lodging expenditures will be included in the definition of medical expenses for purposes of section 213.

The statutory construction of section 213(d)[3] indicates the

---

[3]Sec. 213(d) provides in relevant part:

(d) DEFINITIONS.—For purposes of this section—
   (1) The term "medical care" means amounts paid—
      (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,
      (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or

     \*     \*     \*     \*     \*     \*     \*

   (2) AMOUNTS PAID FOR CERTAIN LODGING AWAY FROM HOME TREATED AS PAID FOR MEDICAL CARE.—Amounts paid for lodging (not lavish or extravagant under the circumstances) while away from home primarily for and essential to medical care referred to in paragraph (1)(A) shall be treated as amounts paid for medical care if—
      (A) the medical care referred to in paragraph (1)(A) is provided by a physician in a licensed hospital (or in a medical care facility which is related to, or the equivalent of, a licensed hospital), and
      (B) there is no significant element of personal pleasure, recreation, or vacation in the travel away from home.
The amount taken into account under the preceding sentence shall not exceed $50 for each night for each individual.

allowance for deducting lodging expenses under section 213(d)(2) is much narrower than the allowance for deducting transportation expenses under section 213(d)(1)(B). Transportation expenses are allowed if the transportation is "primarily for and essential to medical care." This is a one-prong test. Lodging expenses, on the other hand, are allowed if away from home "primarily for and essential to medical care," *and* if the medical care "is provided by a physician in a licensed hospital (or in a medical care facility which is related to, or the equivalent of, a licensed hospital)," *and* "there is no significant element of personal pleasure, recreation, or vacation in the travel away from home." Sec. 213(d)(2). Therefore, a taxpayer must meet this three-prong test to include lodging expenses in the definition of medical expenses under section 213.

In applying this test to the facts before us, petitioners meet prongs one and three. Mrs. Polyak's sojourn in Florida was primarily for and essential to the mitigation of her heart and lung ailments, and so prong one is satisfied. She did not enjoy any significant element of pleasure in Florida due to her disabilities, and so prong three is satisfied. However, the application of the second prong in determining whether medical care is provided by a physician in a licensed hospital or medical care facility is not as clear cut. The language of the statute is ambiguous as to whether incidental medical care, while seeking a more favorable climate for mitigation of an illness, would satisfy the second prong. Therefore, we turn to the legislative history to determine the intent of Congress in enacting this provision.

The House committee report states that the new provision was enacted because:

The committee is aware of instances in which an individual must travel away from home to receive medical care. In many such cases, this is because specialized care for a particular disease is not available at home, or because better care is available elsewhere. * * *

In some instances, as in the case of some chemotherapy treatment for cancer patients, the treatment away from home can be given in a hospital or hospital-related facility on an outpatient basis, which generally is less expensive than treatment on an inpatient basis in a hospital. While under present law the expenses of a hospital stay are deductible, expenses of

lodging incurred away from home during outpatient medical treatment are not eligible for the deduction. The committee believes that a medical expense deduction for lodging expenses should be allowed in appropriate cases.

[H. Rept. 98-432, Part 2 at 1583 (1984), to accompany H.R. 4170 (Pub. L. 98-369).]

The statutory language and its legislative history indicate that Congress intended for lodging to be considered a deductible medical expense only when the away-from-home lodging is primarily for and essential to medical care provided by a physician in a licensed hospital or related facility. However, if the purpose of the lodging is to alleviate specific chronic ailments by seeking a more favorable climate, *Commissioner v. Bilder, supra*, must be followed and such lodging expenditures are not deductible as medical expenses.

The purpose of petitioners' travel was to alleviate Mrs. Polyak's chronic heart and lung ailments by seeking a more favorable climate. Mrs. Polyak did not go to Florida to seek medical care from a physician in a licensed hospital or equivalent outpatient facility. Rather, the medical treatment received by Mrs. Polyak was incidental and of routine nature. Accordingly, the second prong of section 213(d)(2) has not been met. Therefore, we hold that Mrs. Polyak's lodging expenditures while in Florida are not medical expenses and are not deductible.

Additionally, petitioners contend they are entitled to a deduction under section 213 for $315 for prescription medicines, $80 for medical insurance premiums, and $1,581 for transportation to and from Florida. Respondent concedes these expenditures are allowable if substantiated.

Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving they are entitled to any deductions claimed on their return. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); Rule 142(a). If a claimed deduction is not adequately substantiated we are permitted to estimate expenses when we are convinced from the record that the taxpayer has incurred such expenses. *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930). How-

ever, we must have some basis upon which an estimate may be made. *Vanicek v. Commissioner,* 85 T.C. 731, 743 (1985).

From the record, we find that the expense for prescription medicines has been substantiated and is allowed to the extent of $240. The deduction for medical insurance premiums has not been substantiated at all and so there is no basis upon which an estimate may be made. Therefore, we will not allow a deduction for medical insurance premiums. The transportation expenses have been substantiated and are allowed to the extent of $1,124.

Additionally, petitioners claim a medical expense deduction of $206 for a telephone installed in the travel trailer. Respondent has disallowed this expense. The telephone was installed in order to quickly contact the doctor if needed. The Supreme Court has interpreted section 213 very narrowly and has ruled that deductions for all personal and living expenses incidental to medical treatment, other than the express exception for transportation, must be denied. *Commissioner v. Bilder, supra* at 502. Therefore, the telephone expense is a nondeductible personal expenditure under section 262.

Petitioners claim a medical expense deduction of $385 for an air conditioner installed in the travel trailer and $1,580 for an air conditioner installed in their home in Michigan. Respondent has disallowed these expenses. The general rule is that a capital expenditure made by the taxpayer may qualify as a medical expense deduction if it has as its primary purpose the medical care of the taxpayer and is not related to the permanent improvement or betterment of the property. Sec. 1.213-1(e)(1)(iii), Income Tax Regs. This section of the regulation gives as an example of a deductible medical expense, an expense incurred for "an air conditioner which is detachable from the property and purchased only for the use of a sick person."

Petitioners' expenditure for the air conditioner in the travel trailer is substantiated by a copy of the invoice for their new travel trailer purchased on December 14, 1984. The invoice shows a cost of $485 for the air conditioner. Of this amount, petitioners claimed a medical expense deduction of $385 and capitalized the balance of $100. The primary purpose of the air conditioner in the travel trailer

was for the medical care of Mrs. Polyak. However, in order for the air conditioner expenditure to be deductible as a medical expense, petitioners bear the burden of proving either that the air conditioner was detachable, or that the increase in value to the trailer (due to the presence of the air conditioner) was less than the expenditure for the air conditioner. Sec. 1.213-1(e)(1)(iii), Income Tax Regs.; *Gerard v. Commissioner*, 37 T.C. 826 (1962). Petitioners have failed to do so. Therefore, we hold that petitioners have not met their burden of proving they are entitled to the deduction. Accordingly, we deny petitioners a medical expense deduction for the air conditioner in the travel trailer in the amount of $385. The expense for the air conditioner installed in petitioners' Michigan home was not substantiated in any way, and so petitioners have likewise failed to meet their burden of proof. The medical expense in the amount of $1,580 claimed by petitioners for the air conditioner installed in their home is therefore denied.

Petitioners also claim depreciation for their travel trailer as a medical expense. This is inappropriate. Section 167 specifies that a depreciation deduction is allowed for property used in a trade or business or for property held for the production of income. Sec. 167(a). Since there was no evidence presented by petitioners that the travel trailer was used for anything other than housing, depreciation is not allowed. The travel trailer is a nondeductible personal living expenditure under section 262.

The final issue we must address is whether petitioners should treat an expenditure made to repair rental property as a current deduction or as a capital expenditure.

Respondent contends the expense to replace portions of the floor is a nondeductible capital expenditure under section 263. Petitioners contend this expense to repair the floor is an ordinary and necessary business expense, and, therefore, is deductible under section 162.

Since 1921, the regulations under section 162 and its predecessors have continuously provided that:

The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense * * *. Repairs in the nature of replacements, to the extent that they arrest

deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept. [Sec. 1.162-4, Income Tax Regs.]

This regulation comes within the settled principle that "treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Helvering v. Winmill,* 305 U.S. 79, 83 (1938). E.g., *National Muffler Dealers Association, Inc., v. United States,* 440 U.S. 472 (1979); *United States v. Correll,* 389 U.S. 299 (1967).

In cases which have come before this Court regarding the deductibility of the repair of a floor in a building, we have looked to the purpose for which the expenditure was made. E.g., *Honigman v. Commissioner,* 55 T.C. 1067, 1081 (1971), affd. on this issue 466 F.2d 69 (6th Cir. 1972); *Sanford Cotton Mills v. Commissioner,* 14 B.T.A. 1210 (1929); *Schmid v. Commissioner,* 10 B.T.A. 1152 (1928); *Hudlow v. Commissioner,* T.C. Memo. 1971-218. Petitioners did not replace the entire bathroom floor in their rental property. Rather, they repaired a portion of the floor since they cut out the damaged wood and replaced only those boards. The purpose was to keep the property in an ordinarily efficient operating condition. Therefore, a current deduction is allowed under section 162.

To reflect the foregoing,

*Decision will be entered under Rule 155.*