T.C. Memo. 2004-263

UNITED STATES TAX COURT

STEVEN J. AND TERRY L. NAMYST, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20313-03.               Filed November 17, 2004.

<u>Jay B. Kelly</u>, for petitioners.

<u>Blaine Holiday</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined deficiencies of $2,497,
$3,724, $2,875, and $3,343, in petitioners' 1996, 1997, 1998, and
1999 Federal income taxes, respectively.  Respondent also
determined penalties under section 6662[1] of $499.40, $744.80,

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended, and all Rule references are
                                        (continued...)

$575, and $669, for 1996, 1997, 1998, and 1999, respectively. There are four issues for decision.

First, were amounts Mr. Namyst (petitioner) received from Intelligent Motion Controls, Inc. (IMC) reimbursements under an accountable plan qualifying under section 1.62-2(c)(2)(i), Income Tax Regs., rather than amounts includable in petitioners' gross income as compensation? We hold the amounts received were includable in petitioners' gross income as compensation.

Second, were amounts petitioners received for the sale of petitioner's tools includable in their gross income? We hold that they were.

Third, does the 6-year period of limitations under section 6501(e)(1)(A) permit respondent's determination for 1998? We hold that it does.

Fourth, are petitioners liable for the accuracy-related penalty under section 6662(a)? We hold that they are not.

FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Eagan, Minnesota.

---

[1](...continued)
to the Tax Court Rules of Practice and Procedure.

Petitioners, husband and wife, filed joint Federal income tax returns for 1996, 1997, 1998, and 1999. Petitioner was employed by IMC, beginning in 1994 and during the years in issue. IMC made motor controls for blood pumps, and, later, developed digital inspection hardware and software for the jewelry industry. IMC's products included a patented device to analyze and appraise diamonds. Petitioner was employed to design and manufacture IMC's products.

For each of 1994, 1995, and 1996, petitioner received Forms W-2, Wage and Tax Statement, from IMC, reporting his wages. Petitioner's Form W-2 for 1995 reported $42,000 in gross wages. Petitioner's Form W-2 for 1996 reported $7,000 in gross wages. The amount reported on petitioner's 1996 Form W-2 represented wages paid to him between January and March 1996.

John Kerkinni was the sole shareholder, CEO, and president of IMC. He never took a salary from IMC. Mr. Kerkinni met petitioner in 1980 when they worked together for another corporation. In 1994, Mr. Kerkinni called petitioner and asked him to come work for IMC to develop the equipment to analyze diamonds. Petitioner did not have an ownership interest in IMC. In designing and manufacturing IMC's products, petitioner and other IMC employees used tools and equipment that petitioner had personally owned for many years (petitioner's old tools).

In March 1996, Mr. Kerkinni approached petitioner and informed him that IMC could no longer afford to pay him a salary. Petitioner claims that at that time, he agreed to continue working for IMC without a salary. Petitioner and Mr. Kerkinni agreed that IMC would reimburse petitioner for any expenses he paid in performing his duties as an employee. The reimbursement payments were to be made whenever and in whatever amounts IMC could afford to make them. Mr. Kerkinni also agreed that IMC would purchase any of petitioner's old tools that were being used by employees of IMC. At Mr. Kerkinni's request, petitioner kept an inventory list of the tools and equipment owned by him and used by IMC employees and added to the list annually.

During 1996, 1997, 1998, and 1999, petitioner paid expenses related to his work at IMC. Petitioner's expenses included travel and purchases of new equipment. IMC issued checks to petitioner between March and December 1996, and in 1997, 1998, and 1999. The amounts of these checks were not reported to petitioner on a Form W-2, and petitioners did not report the amounts of the checks on their 1996, 1997, 1998, or 1999 Federal income tax returns. The checks from IMC were issued almost every month, although on different days each month. The amounts of the checks varied, from $500 (January 2, 1997) to $4,000 (September 20, 1996), and were generally in round numbers. Petitioner did not receive a statement allocating the amounts of the checks

between expense reimbursements and payments for IMC's purchase of petitioner's old tools.

Respondent determined deficiencies for each of petitioners' taxable years 1996, 1997, 1998, and 1999. In a notice of deficiency dated August 28, 2003, respondent adjusted petitioners' income for each year to include the amounts of the checks from IMC. As a result of respondent's adjustments to petitioners' gross income, petitioners were no longer entitled to the earned income credits claimed on their returns for 1996, 1997, 1998, and 1999. The parties stipulated that petitioners are entitled to the child tax credit for 1998 and 1999. Respondent also conceded that petitioners were entitled to miscellaneous itemized deductions, limited under section 67(a) to the extent the expenses exceeded 2 percent of petitioners' adjusted gross income, for the expenses petitioner paid on behalf of IMC in each year. On brief, respondent conceded an additional $3,181.82 of petitioners' expenses for 1996. The only expenses listed by petitioner that were not allowed as miscellaneous itemized deductions by respondent in either the notice of deficiency or on brief were those made by petitioner before March 1996. Respondent treated the amounts petitioners received from IMC in exchange for petitioner's old tools as wage income. Respondent also determined that petitioners were liable for an

accuracy-related penalty under section 6662(a) for each year in issue.

## OPINION

Petitioners argue that the checks issued to petitioner by IMC between March 1996 and December 1999 were not wages, but were in part reimbursements for the expenses petitioner paid in 1994, 1995, 1996, 1997, 1998, and 1999, and in part proceeds from the sale of petitioner's tools to IMC. With respect to the expenses petitioner paid, petitioners claim that the reimbursement arrangement between petitioner and Mr. Kerkinni qualifies as an "accountable plan" under section 1.62-2(c)(2)(i), Income Tax Regs., and that petitioners were not required to include the amounts of the expense reimbursements in their gross income. Petitioners also argue that petitioner sold his old tools to IMC at reasonable used values set by petitioner totaling $23,919.50, and that the amounts that represented the proceeds from these sales were returns of petitioner's capital and not includable in gross income.

Respondent argues that it is unreasonable to believe that petitioner agreed to work for IMC without a salary or an ownership interest in the corporation. Although the arrangement was unusual, we reject respondent's contention. Petitioner is dedicated to his work and loyal to his friend, Mr. Kerkinni.

The parties do not address the application of section 7491(a) or (c) in the instant case. Respondent issued the notice of deficiency on August 28, 2003, and it is possible that respondent's examination of petitioners' returns for 1996, 1997, 1998, and 1999 began after July 22, 1998. However, petitioners do not argue that the burden of proof shifts to respondent under section 7491(a) and have not shown that the threshold requirements of section 7491(a) were met. We decide the issues involving petitioners' unreported income on a preponderance of the evidence, and the burden of proof does not affect the outcome.

We shall first address petitioners' contention that they were not required to report as gross income the amounts IMC reimbursed petitioner for his expenses, which included travel and the purchases of new equipment on behalf of IMC. We shall then address petitioner's contention that the remainder of the payments made by IMC were returns of petitioner's capital with respect to the sale of his old tools to IMC.

I.  Accountable Plan

Section 61 includes in gross income all income, from whatever source derived. Section 62 defines adjusted gross income as gross income minus certain deductions. Section 62(a)(2)(A) allows taxpayers to deduct from gross income amounts paid by the taxpayer "in connection with the performance by him

of services as an employee, under a reimbursement or other expense allowance arrangement with his employer." Expense reimbursements under an accountable plan are not reported as wages on the employee's Form W-2 and are exempt from withholding and payment of employment taxes. Sec. 1.62-2(c)(4), Income Tax Regs. In order to qualify as an accountable plan under section 62(a)(2)(A), an arrangement must satisfy the business connection, substantiation, and return of excess requirements. Sec. 1.62-2(c)(1), Income Tax Regs. The business connection, substantiation, and return of excess requirements under section 1.62-2(d), (e), and (f), Income Tax Regs., are applied on an employee-by-employee basis; therefore, the failure of one employee to substantiate his expenses would not cause reimbursements to other employees to be treated as made under a nonaccountable plan. Sec. 1.62-2(i), Income Tax Regs.

A. Business Connection Requirement

The business connection requirement is satisfied if an arrangement provides advances, allowances, or reimbursements only for business expenses that are allowed as deductions under sections 161 through 198, and that are paid by the employee in connection with the performance of services as an employee of the employer. Sec. 1.62-2(d)(1), Income Tax Regs.; see also Biehl v. Commissioner, 118 T.C. 467, 482 (2002), affd. 351 F.3d 982 (9th

Cir. 2003). Respondent admits that petitioner was an employee of IMC during all of the years in issue.

In the notice of deficiency and on brief, respondent allowed deductions under section 162 for the expenses petitioner paid in connection with the performance of services as an employee of IMC. A deduction under section 162(a) requires that the reported expenses be "directly connected with or pertaining to" the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. Petitioner kept track of the expenses he made carefully, even deducting sales tax from his expense reports when his own personal purchases were on receipts with purchases he made for IMC. Petitioner was dedicated to IMC's business, and the work he was doing to develop IMC's products. We believe that the expenses he made and listed on the expense reports were directly connected to IMC's business of developing its products. Therefore, we conclude that the business connection requirement was met here.

B.    Substantiation Requirement

An arrangement meets the substantiation requirement if it requires that each business expense be substantiated to the payor within a reasonable period of time. Sec. 1.62-2(e)(1), Income Tax Regs. A reasonable period of time depends on the facts and circumstances of each arrangement. Sec. 1.62-2(g)(1), Income Tax Regs. For travel, entertainment, and other expenses governed by

section 274(d), the substantiation requirement is fulfilled if the employee provides information sufficient to satisfy the substantiation requirements of section 274(d) and the regulations thereunder to the employer. Sec. 1.62-2(e)(2), Income Tax Regs. Section 274(d) allows a deduction for expenses of traveling away from home only if an employee substantiates the amount, date, time, place, and business purpose for the travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). For business expenses not governed by section 274(d), the employee must submit information to the employer sufficient to enable the employer to identify the specific nature of each expense and conclude that the expense is attributable to the employer's business activities. For these nonsection 274(d) expenses, each of the elements of an expenditure or use must be substantiated to the payor. Sec. 1.62-2(e)(3), Income Tax Regs.

Petitioner and Mr. Kerkinni testified that petitioner submitted a list of expenses and receipts to Mr. Kerkinni annually. In addition, before making expenditures on behalf of IMC, petitioner would inform Mr. Kerkinni that his work required a certain piece of equipment, and, with Mr. Kerkinni's permission, he would purchase what was needed. Petitioner would then show Mr. Kerkinni the receipts. Mr. Kerkinni asked petitioner to keep track of and save the receipts. Petitioner's lists and receipts were submitted at trial. The lists provided

by petitioner stated the date, vendor, description, invoice number, amount, and mileage (where relevant) for each expenditure. Each annual list was attached to an envelope containing receipts for the expenses. Some of petitioner's expenses were for travel away from home for trade shows, and the rest were for expenses not covered by section 274(d) (i.e., equipment for IMC's business).

As described above, respondent allowed petitioners deductions from adjusted gross income under section 162 for the 1996, 1997, 1998, and 1999 expenses listed in the exhibits submitted at trial. These lists of expenses were the lists petitioner created for substantiation of his expenses to Mr. Kerkinni. The substantiation rules for business expense deductions under sections 162 and 274(d) are incorporated by section 1.62-2(e)(1) through (3), Income Tax Regs., for the purpose of determining whether a reimbursement arrangement constitutes an accountable plan. In the notice of deficiency and on brief, respondent accepted petitioner's lists as proper substantiation under section 162, and we agree that petitioner has met the substantiation requirements of section 162. We believe that petitioner's lists of expenses were also sufficiently detailed to qualify as proper substantiation under the requirements of section 274(d), where applicable.

In order to meet the substantiation requirement of section 1.62-2(e), Income Tax Regs., petitioner must have actually submitted his substantiation to IMC in order to be reimbursed. We have found above that petitioner submitted expense reports to Mr. Kerkinni annually, and he showed Mr. Kerkinni the receipts after each expenditure was made. Petitioner's records were kept carefully, and at the end of each year, he submitted an accurate list of his expenditures. That petitioner kept Mr. Kerkinni informed of his expenditures when they were made helps to convince us that it was reasonable for petitioner to submit a detailed list only annually.

C.   Returning Amounts in Excess of Expenses

Section 1.62-2(f), Income Tax Regs., provides that an arrangement meets the third requirement of an accountable plan if the employee is required to return to the payor within a reasonable period of time any amount paid under the arrangement in excess of the expenses substantiated. When an employer advances money to an employee for anticipated expenses, paragraph (f) of section 1.62-2, Income Tax Regs., is satisfied only if the amount of money advanced is reasonably calculated not to exceed the amount of anticipated expenditures, the advance is made within a reasonable period of when the expenditures are made, and any excess of the advance over the substantiated expenses is required to be repaid within a reasonable period after the

advance is received.  The facts and circumstances of each arrangement determine whether an employee is required to return amounts in excess of substantiated expenses.  Id.

Under the arrangement here, petitioner was required to get Mr. Kerkinni's permission before making expenditures for IMC.  He was also required to submit his receipts to Mr. Kerkinni for reimbursement.  IMC agreed to pay petitioner whatever amounts it could afford to pay as reimbursements.  There is no evidence that petitioner was required to return any amounts he received that exceeded his expenses.  Although petitioner was required to substantiate expenses, the annual reimbursement amounts exceeded petitioner's expenses.  If the excess amounts were meant to be advances for anticipated expenses petitioner would make, there is no evidence that the advances were calculated to approximate the amounts of the anticipated expenditures.  The record does not show whether petitioner did in fact return any of the excess amounts to IMC.  Based on all the facts available to us, we do not believe that the arrangement between petitioner and Mr. Kerkinni required petitioner to return excess amounts to IMC. Therefore, the arrangement did not satisfy the returning amounts in excess of expenses requirement of section 1.62-2(f), Income Tax Regs.

We believe that petitioner and Mr. Kerkinni did come to an agreement about how IMC would reimburse petitioner for his

expenses. However, because petitioners have not shown that the reimbursement arrangement satisfied all three of the requirements of section 1.62-2, it did not qualify as an accountable plan under section 62(a)(2)(A) and section 1.62-2(c), Income Tax Regs. Therefore, the amounts petitioner received from IMC in the last 9 months of 1996, and in 1997, 1998, and 1999, in excess of the amounts IMC paid for petitioner's tools as described below, should be included in petitioners' gross income in those years as compensation.

II.  Expenses Paid in 1994 and 1995

Petitioners argue that expenditures of $10,393.90 petitioner made in 1994 and 1995 were properly excludable from their gross income in the years covered by the accountable plan, because the amounts were repaid as part of an accountable plan. IMC paid petitioner a salary in 1994 and 1995 but did not reimburse him for expenses during those years.[2]  Because we have found that the arrangement between petitioner and Mr. Kerkinni did not qualify as an accountable plan in 1996, 1997, 1998, or 1999, petitioner's expenses in 1994 and 1995 were not part of an accountable plan in any year.

---

[2]The record does not show whether petitioners claimed these expenses as miscellaneous itemized deductions from their adjusted gross income in 1994 and 1995.

III.  Sale of Petitioner's Tools to IMC

Petitioner claims that, as a part of his arrangement with Mr. Kerkinni in 1996, he agreed to sell his old tools to IMC. Petitioner used his old tools in his work for IMC, and other employees of IMC also used the tools.  In 1996, petitioner brought the tools to IMC and allowed it to take ownership and possession of them.  At that time, petitioner agreed with Mr. Kerkinni that he would keep an inventory of the tools that he transferred to IMC.  Petitioner updated the inventory list annually as more of his tools were used by IMC employees.  He also agreed to assign a reasonable used value to each tool, which values IMC accepted as sale prices.  The record does not show how petitioner arrived at the values he placed on his tools. Respondent does not dispute that petitioner sold his tools to IMC for the amounts petitioner listed in the inventory and that IMC took possession of the tools.  We are convinced that petitioner did sell his old tools to IMC.

Petitioners argue that the entire amount IMC paid for the tools should be treated as a return of capital.  Respondent argues that because petitioners did not establish basis in any of the purchased tools, the amount paid for the tools should be treated as compensation for services to IMC.  Because we have concluded that petitioner did sell his tools to IMC, we disagree with respondent's characterization of the proceeds from the sale

of the old tools as compensation.  It is likely that some of petitioner's old tools qualified as capital assets under section 1221 and some of the old tools were property used in petitioner's trade or business (of being an employee of IMC) of a character subject to the allowance for depreciation under section 167(a)(1).[3]  See Noyce v. Commissioner, 97 T.C. 670, 683 (1991).  It is unnecessary for us to distinguish among petitioner's old tools; the result is the same.  Gain from the sale of a capital asset held longer than 1 year is long-term capital gain under section 1222(3), and net gain from the sale of property used in a taxpayer's trade or business is treated as long-term capital gain under section 1231(a)(1).  Petitioner has shown that he owned all of the old tools for more than 1 year before he first began selling them to IMC; i.e., March 1996.  We believe, based on petitioner's testimony and the photographs the parties submitted of petitioner's old tools, that these were tools petitioner owned for both everyday use and use in his work for many years.[4]

---

[3]We do not believe that any of the tools petitioner sold to IMC during 1999 should be characterized as supplies of a type regularly used or consumed by petitioner in the ordinary course of his trade or business within the meaning of sec. 1221(a)(8). Any such supplies held or acquired by a taxpayer on or after Dec. 17, 1999, are excluded from characterization as capital assets by sec. 1221(a)(8).

[4]We make the distinction between long- and short-term capital gain with respect to petitioner's old tools only.  IMC reimbursed petitioner for the new equipment he purchased for IMC during 1994, 1995, 1996, 1997, 1998, and 1999 as part of the

(continued...)

A taxpayer must establish his cost or adjusted basis for the purpose of determining gain or loss that he must recognize on a sale of property.  O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), affg. T.C. Memo. 1957-193; Brodsky v. Commissioner, T.C. Memo. 2001-240; Schaeffer v. Commissioner, T.C. Memo. 1994-206.  Proof of the cost or adjusted basis is necessary because recovery of an amount in excess of cost constitutes income.  Cullins v. Commissioner, 24 T.C. 322, 328 (1955).  In certain circumstances, we may use the Cohan rule to estimate a taxpayer's basis in an asset at the time of transfer.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Group Admin. Premium Servs., Inc. v. Commissioner, T.C. Memo. 1996-451.  In order for the Court to estimate basis, the taxpayer must provide some "reasonable evidentiary basis" for the estimation.  Group Admin. Premium Servs., Inc., supra (citing Polyak v. Commissioner, 94 T.C. 337, 345 (1990) and Vanicek v. Commissioner, 85 T.C. 731, 743 (1985)); Saykally v. Commissioner, T.C. Memo. 2003-152.

Here, petitioners have not provided any facts or details that permit a reasonable estimate of their basis in the purchased tools.  Petitioner testified that the tools were his "older equipment" and that he had owned some of them since he was 10 or 12.  Pictures of each tool were submitted at trial with

⁴(...continued)
arrangement between petitioner and Mr. Kerkinni.

petitioner's list of the tools' reasonable used values. The pictures, however, were taken on January 1, 2004, in preparation for trial, and they do not provide evidence of petitioner's cost when the tools were new. The Cohan rule should not be used as a substitute for petitioners' burden of proof. Reinke v. Commissioner, 46 F.3d 760, 764 (8th Cir. 1995) (citing Coloman v. Commissioner, 540 F.2d 427, 431-432 (9th Cir. 1976), affg. T.C. Memo. 1974-78)), affg. T.C. Memo. 1993-197. Because petitioners have not provided any information that would help us estimate their basis in the tools, the Cohan rule is inapplicable. Consequently, the amount paid by IMC for petitioner's tools should be treated as long-term capital gain by petitioners, and it is includable in petitioners' gross income for the years in which the amounts were received. Based on the inventory list and petitioner's credible testimony, it appears that petitioner transferred ownership of most of his tools in 1996. As a result, we shall allocate $19,371.25 (the total amount IMC paid petitioner in 1996) to 1996 for the sale of the tools. The inventory list that petitioner created at the beginning of 1997 indicates that he sold $23,140.50 worth of old tools to IMC in 1996. However, petitioner was paid only $19,371.25 in 1996. We believe IMC purchased $3,769.25 (the difference between $23,140.50 and $19,371.25) worth of tools in 1997. The inventory list petitioner created in early 1998 indicates that petitioner

also sold $245 worth of tools in 1997. Therefore, in total, we allocate $4,014.25 for the sale of tools to petitioners' 1997 tax year. Petitioner's inventory list indicates that petitioner transferred $320 worth of tools in 1998; therefore, $320 attributable to the sale of the tools will be allocated to petitioners' 1998 gross income. Petitioner sold $214 worth of tools in 1999; therefore, $214 attributable to the sale of the tools will be allocated to petitioners' 1999 gross income.

IV. Summary of Unreported Income

In summary, petitioners improperly failed to report the following amounts in their income:

| Year | Sale of tools | Compensation |
|------|---------------|--------------|
| 1996 | $19,371.25 | -0- |
| 1997 | 4,014.25 | $15,635.75 |
| 1998 | 320.00 | 21,280.00 |
| 1999 | 214.00 | 29,286.00 |

V. Period of Limitations for 1998

Generally, the Commissioner must assess an income tax deficiency for a specified year within 3 years from the date the taxpayer's return for that year was filed. Sec. 6501(a). However, in cases where a filed return omits from gross income an amount exceeding 25 percent of the amount stated as gross income on the return, section 6501(e) provides that the tax may be assessed at any time within 6 years of the filing of the return. Petitioners argue that the 3-year period of limitations on

assessment under section 6501(a) applies for their 1998 tax year, and that the period expired before respondent issued the notice of deficiency on August 28, 2003.[5]  Respondent admits that petitioners filed their 1998 return on April 15, 1999.  However, respondent argues that because petitioners underreported their income by more than 25 percent of the amount of gross income stated on their return, the appropriate period of limitations is 6 years, pursuant to section 6501(e).  Because we concluded above that petitioners are not entitled to exclude their income from IMC in any year as paid under an accountable plan, petitioners underreported their gross income for 1998 by $21,600.  Petitioners reported gross income of $18,562 on their 1998 return.  Twenty-five percent of $18,562 is $4,640.50.  Therefore, the appropriate period of limitations is 6 years under section 6501(e).  The period of limitations for assessment of petitioners' 1998 taxes did not expire before respondent issued the notice of deficiency.

VI.  Accuracy-Related Penalty

Respondent asserted an accuracy-related penalty under section 6662(a) for each of petitioners' taxable years 1996, 1997, 1998, and 1999.  Section 6662(a) provides that if section 6662 applies to any "portion of an underpayment of tax required

[5]Petitioners signed Form 872, Consent to Extend the Time to Assess Tax, for their taxable years 1996, 1997, and 1999.

to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which [section 6662] applies." As relevant here, section 6662 applies to the portion of any underpayment that is attributable to negligence or disregard of the rules or regulations. Sec. 6662(b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); Gowni v. Commissioner, T.C. Memo. 2004-154. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Under section 6664, an exception is provided to the imposition of a section 6662 accuracy-related penalty where a taxpayer establishes that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs.

We have concluded that petitioners were required to report as gross income the amounts received as reimbursements of petitioner's substantiated expenses and in exchange for

petitioner's tools.  Our resolution of the issues in this case required careful examination of the relevant laws, trial exhibits, and testimony.  Petitioners' omission of the reimbursement income from IMC was made in good faith and with the belief that the reimbursement arrangement would qualify as an accountable plan.  It was not unreasonable that petitioners did not report any of the income, since the arrangement between petitioner and Mr. Kerkinni provided that petitioner would not receive any reportable wages from IMC, and petitioner did not receive a Form W-2 for any of the years in issue.  In addition, petitioners' failure to report the proceeds they received for petitioner's tools was a result of their belief that the payments did not exceed petitioner's basis in the tools.  Based on the information they had, petitioners made an effort to comply with the tax laws in preparing their returns.  Therefore, we conclude that the accuracy-related penalty is not appropriate, and petitioners are not liable for the penalty pursuant to section 6662.

To reflect the foregoing and concessions by respondent,

Decision will be entered under Rule 155.