T.C. Memo. 2014-204

UNITED STATES TAX COURT

GERALD WAYNE WHEELER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9779-12.                    Filed October 6, 2014.

Gerald Wayne Wheeler, pro se.

<u>G. C. Barton</u> and <u>H. Elizabeth H. Downs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent determined deficiencies and additions to tax

with respect to petitioner as follows:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.  All monetary amounts are rounded to the nearest dollar.

| [*2] | | Additions to tax | | |
|------|------------|-----------------|-----------------|-------------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 2003 | $113,925 | $25,633 | $28,481 | $2,939 |
| 2004 | 32,093 | 7,221 | 8,023 | 920 |

After concessions, the issues for decision are: (1) whether petitioner received taxable income of $80,798 from Cabinet Door Shop for tax year 2003; (2) whether RCC Capital Group should be disregarded as an entity separate from petitioner for Federal tax purposes and its net income attributed to petitioner for the years at issue; and (3) whether petitioner is liable for additions to tax for the years at issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Arkansas when the petition was filed.

Petitioner incorporated Specific Enterprises, an S corporation, in the late 1980s and conducted a cabinet door shop business using this entity until 2002 when it was liquidated and dissolved. Throughout this time, the corporation operated its business in a factory building owned by petitioner and its assets consisted primarily of equipment and inventory. After the corporation dissolved in 2002, the business continued in the same location through a separate entity,

**[*3]** Cabinet Door Shop, LLC (Cabinet Door Shop)--a company managed by one of petitioner's daughters. Petitioner received the corporation's equipment and inventory in liquidation.

On December 3, 2002, an entity called RCC Capital Group (RCC)[2] was formed that purported to be a "PRIVATE, NON-STATUTORY, NON-ASSOCIATED, CONTRACTUAL PURE TRUST (CPT)".[3] The trust was created by Joseph N. Sweet, the "Creator".[4] Brad R. Scott, the "Exchanger", transferred $21 to the trust in exchange for 100 capital units in the trust.[5] The "First Trustee", "Executive Secretary", and "General Manager" of the trust was

---

[2]RCC stood for Robin, Cindy, and Cathy--petitioner's daughters.

[3]Article 14 of the trust contract, titled "TAXATION IMMUNITY", implies that the entity was ostensibly intended to comport with sec. 301.7701-4(b), Proced. & Admin. Regs., for "Business Trust[s]" and that "business trusts" are not within the scope of the "Restatement of the Law of Trusts, 2d". In citing the Restatement, the trust contract states that "[t]he business trust is a special kind of business association and can best be dealt with in connection with other business associations."

[4]Mr. Sweet was later found guilty of conspiracy to defraud the United States and corrupt interference with internal revenue laws under 18 U.S.C. sec. 371 (2000) and 26 U.S.C. sec. 7212(a) (2000), respectively.

[5]The record indicates that Mr. Sweet and Mr. Scott were not involved in any administration of the trust besides signing the trust contract, appointing a trustee, and directing the capital units to petitioner's relatives. Although petitioner met with Mr. Sweet to initiate the trust, petitioner never met with Mr. Scott and did not know him personally.

[*4] John Henry Foster--a longtime family friend of petitioner and accountant for petitioner, Specific Enterprises, and Cabinet Door Shop. Pursuant to the trust contract Brad R. Scott directed the majority of the initial issuance of his 100 capital units to petitioner's three daughters. The remaining capital units were directed to other relatives of petitioner. The trust contract and records were kept in a safe on the premises of Cabinet Door Shop.

On January 2, 2003, petitioner and RCC entered into an "Asset Purchase Option Contract" (drafted by petitioner) where petitioner purported to grant RCC options to purchase petitioner's factory building, the land upon which it was located, and equipment. The exercise price for the contract was $1,650,000, and petitioner accepted $21 (presumably the same $21 conveyed to RCC by Brad R. Scott) plus two promissory notes valued at $700,000 and $950,000 in full consideration of the deal. The contract was also contingent upon a separate rental contract, the "Facility Production Contract", between RCC and Cabinet Door Shop for Cabinet Door Shop's use of the factory building, land, and equipment. Petitioner drafted the rental contract and determined the lease price. The contract provided for an initial term of two years ending on December 31, 2004. The contract also provided for remedies in the event of default by Cabinet Door Shop or RCC. Neither representatives of Cabinet Door Shop nor representatives of

[*5] RCC negotiated the terms of the rental contract, and RCC's trustee never took action to enforce the contract because it was a family matter. At the behest of petitioner, RCC did not file income tax returns.

Pursuant to the "Facility Production Contract", dated January 3, 2003, Cabinet Door Shop made total rental payments of $273,000 and $126,000 to RCC for 2003 and 2004, respectively, although RCC did not exercise the option to purchase the factory building, land, and equipment from petitioner until some time around March 10, 2004. After receiving these rental payments RCC made total payments to petitioner in the exact same amounts: $273,000 in 2003 and $126,000 in 2004.

In 2003 as part of a separate transaction Cabinet Door Shop made monthly installment payments to petitioner totaling $80,798 for the sale of inventory.

Cabinet Door Shop stopped making rental payments to RCC in June 2004, and RCC, in turn, stopped making payments to petitioner.[6] Petitioner testified that the remaining payments owed to him under the "Asset Purchase Option Contract"

---

[6]The only income generated by RCC was from the assets it acquired through the "Asset Purchase Option Contract". Foster, acting as executive trustee of RCC, testified that he had a very limited role as manager of the trust, stating that "the trust wasn't set up with a lot of latitude. The trust was set up specifically to address the equipment purchase, the building purchase, hold it in the trust and lease it to the Cabinet Door Shop."

**[\*6]** were a gift to RCC. Cabinet Door Shop continues to use the same equipment, factory building, and land associated with the "Facility Production Contract" to this day.

Petitioner failed to file tax returns for 2003 and 2004, and respondent prepared substitutes for returns (SFRs) for these years pursuant to section 6020(b). Petitioner did not pay taxes or estimated taxes for the years at issue.

OPINION

I.    Petitioner's Tax Liability

Petitioner argues that he owes no tax from the sale of assets to Cabinet Door Shop and RCC in 2003 and 2004, respectively, because his cost bases in the assets offset the proceeds from the sales. Respondent contends that the entire amount realized upon the sale of inventory to Cabinet Door Shop in 2003 should be recognized as taxable income to petitioner. Respondent also contends that petitioner's sale of the factory building, land, and equipment to RCC in 2004 should be disregarded because RCC was a sham entity and that lease payments from Cabinet Door Shop to RCC for these assets were merely lease payments to petitioner. We examine the two transactions separately starting with the sale of inventory to Cabinet Door Shop in 2003.

**[\*7]** A.     Sale of Inventory to Cabinet Door Shop in 2003

Petitioner asserts that his basis in the inventory sold to Cabinet Door Shop offsets the proceeds from that sale.  For the reasons set forth below, we conclude that petitioner has failed to satisfy his burden of proof on the issue.

A taxpayer must establish his cost or adjusted basis for the purpose of determining gain or loss that he must recognize on a sale of property.  O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), aff'g T.C. Memo. 1957-193; Brodsky v. Commissioner, T.C. Memo. 2001-240; Schaeffer v. Commissioner, T.C. Memo. 1994-206.  Proof of the cost or adjusted basis is necessary because recovery of an amount in excess of cost constitutes income.  Cullins v. Commissioner, 24 T.C. 322, 328 (1955).  In certain circumstances, we may use the Cohan rule to estimate a taxpayer's basis in an asset at the time of transfer.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Grp. Admin. Premium Servs., Inc. v. Commissioner, T.C. Memo. 1996-451.  In order for the Court to estimate basis, the taxpayer must provide some "reasonable evidentiary basis" for the estimate. Grp. Admin. Premium Servs., Inc. v. Commissioner, T.C. Memo. 1996-451 (citing Polyak v. Commissioner, 94 T.C. 337, 345-346 (1990), and Vanicek v. Commissioner, 85 T.C. 731, 743 (1985)).

**[\*8]**  Petitioner has not provided any facts or details that permit a reasonable estimate of his basis in the inventory.  Although petitioner provided respondent with his personal tax returns and tax returns for Specific Enterprises one day before trial, these returns are mere admissions; and we are unwilling to attach significance to them in the absence of corroborating evidence as to petitioner's basis in his assets.  The record does not establish the cost basis of the inventory.  The record indicates only that Cabinet Door Shop paid $80,798 to petitioner for the inventory.  Whether this amount was full payment for the inventory or only a partial payment cannot be determined.  The Cohan rule is inapplicable when the taxpayer presents "no evidence at all that would permit an informed estimate of" basis.  Estate of Reinke v. Commissioner, 46 F.3d 760, 764 (8th Cir. 1995), aff'g T.C. Memo. 1993-197.  Because petitioner has not provided any pertinent information that would help us estimate his basis in the inventory, the Cohan rule does not apply.  Consequently, the entire amount paid by Cabinet Door Shop for petitioner's inventory is includable in petitioner's gross income for the 2003 taxable year.

B.    Sale of Factory Building, Land, and Equipment to RCC

Respondent argues that petitioner is the true earner of the income received by RCC.  We agree.

[*9]    Section 61(a) defines gross income as "all income from whatever source derived".  A fundamental principle of income taxation is that income is taxable to the person who earns it.  Lucas v. Earl, 281 U.S. 111, 114-115 (1930).  The "true earner" of income is the person or entity who controls the earning that such income, and not necessarily the person or entity who receives the income.  Barmes v. Commissioner, T.C. Memo. 2001-155.  "'The crucial question * * * [is] whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes.'"  Id. (quoting Commissioner v. Sunnen, 333 U.S. 591, 604 (1948)).  An anticipatory assignment of income from a true income earner to another entity by means of a contractual arrangement does not relieve the true income earner from tax and is not effective for Federal income tax purposes regardless of whether the contract is valid under State law.  See Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980).  A taxpayer has the legal right to minimize his taxes or avoid them totally by any means which the law permits, but this right does not bestow upon the taxpayer the right to structure a paper entity to avoid tax when that entity does not stand on the solid foundation of economic reality.  Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), aff'd, 731 F.2d 1417 (9th Cir. 1984).

[*10] Petitioner is the true earner of the rental income paid from Cabinet Door Shop to RCC under the Facility Production Contract for three reasons. First, petitioner owned the assets that RCC leased to Cabinet Door Shop under the contract throughout the years at issue up until March 15, 2004, when he deeded the assets to RCC. Therefore, at a minimum, Cabinet Door Shop's 2003 rental payments and its first few 2004 rental payments were properly allocable to petitioner as the owner of that property.

Second, RCC acted as a mere conduit for the flow of income from Cabinet Door Shop to petitioner. RCC received income attributable to petitioner's assets and subsequently paid petitioner the same amounts it received from Cabinet Door Shop. When Cabinet Door Shop suspended rental payments to RCC in mid-June 2004, RCC ceased making payments to petitioner. RCC's sole trustee testified to his limited role as manager of the trust, stating that the "trust was set up specifically to address the equipment purchase, the building purchase, hold it in the trust and lease it to the Cabinet Door Shop."

Finally, there was no separation of trust administration from the operation of Cabinet Door Shop, and petitioner retained substantive control over RCC. Petitioner drafted the contract between RCC and Cabinet Door Shop. Neither RCC nor Cabinet Door Shop negotiated the terms of the contract, and petitioner

**[*11]** set the price for the lease. At the insistence of petitioner, RCC did not file income tax returns. When Cabinet Door Shop ceased its rental payments, RCC did not take any action to enforce the Facility Production Contract because the trustee felt that it was a "family matter" and he could not take action. Similarly, petitioner testified that the remaining payments owed to him under the Asset Purchase Option Contract were a "gift" to RCC. Petitioner failed to provide persuasive evidence that the Asset Purchase Option Contract and the Facility Production Contract were entered into in good faith and that the parties to these contracts intended to be bound by their respective agreements and expected to have to honor them. Instead, we believe that the agreements are shams.

Because petitioner had sufficient power and control over RCC's receipt of income from Cabinet Door Shop, he is the true earner of this income. As the payments were rental payments to petitioner in substance, petitioner may not use the alleged bases he had in the assets to offset this income. Consequently, the rental income paid by Cabinet Door Shop to RCC is taxable to petitioner in its entirety.

[*12] II.     Additions to Tax

A.     Failure To Timely File a Tax Return

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on a return for each month, or fraction thereof, for which there is a failure to file the return, not to exceed 25% in the aggregate. Respondent's introduction into evidence of account transcripts showing that petitioner has not filed tax returns for the years at issue is sufficient to meet respondent's burden of production for the section 6651(a)(1) failure to timely file penalty. Holmes v. Commissioner, T.C. Memo. 2011-31. Respondent produced IRS transcripts of petitioner's account showing that he did not file returns for 2003 and 2004, and petitioner testified at trial that he did not file tax returns for these years. Furthermore, petitioner presented no evidence suggesting that his failure to pay was due to reasonable cause. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Accordingly, we sustain respondent's determination of the additions to tax for failure to file tax returns for tax years 2003 and 2004.

B.     Failure To Timely Pay Tax

Section 6651(a)(2) provides for an addition to tax when a taxpayer fails to timely pay the tax shown on a return unless the taxpayer proves that the failure was due to reasonable cause and not due to willful neglect. Respondent has

[*13] satisfied his burden of production with respect to the additions to tax under section 6651(a)(2). Respondent prepared SFRs in accordance with section 6020(b), and petitioner did not pay the amount shown as due. See Cabirac v. Commissioner, 120 T.C. 163, 170-173 (2003). As a result, respondent's burden of producing evidence that supports an addition to tax under section 6651(a)(2) for failure to timely pay tax due is satisfied. Petitioner testified that he did not make any tax payments for 2003 and 2004. Petitioner presented no evidence suggesting that his failure to pay was due to reasonable cause. See Higbee v. Commissioner, 116 T.C. at 446-447. We accordingly sustain the section 6651(a)(2) additions to tax.

C. Failure To Pay Estimated Tax

Respondent determined that petitioner is liable for additions to tax under section 6654. In a proceeding before this Court, the Commissioner's obligation under section 7491(c) initially to come forward with evidence that it is appropriate to apply a particular addition to tax against a taxpayer is conditioned upon the taxpayer's assigning error to the Commissioner's determination. Because petitioner contested his liability for the additions to tax in his petition and respondent was put on notice that petitioner's liability for the additions to tax under section 6654 was an issue, we conclude that petitioner assigned error to the

[*14] additions to tax under section 6654.  See Wheeler v. Commissioner, 127 T.C. 200, 207 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).  Therefore, we must review the record with respect to the additions to tax under section 6654 to ascertain whether respondent met his burden of production.

Section 6654(a) and (b) provides for an addition to tax in the event of a taxpayer's underpayment of a required installment of estimated tax.  As it relates to this case, each required installment of estimated tax is equal to 25% of the "required annual payment", which in turn is equal to the lesser of (1) 90% of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90% of his or her tax for such year), or (2) 100% of the tax shown on the taxpayer's return for the immediately preceding taxable year.  Sec. 6654(d)(1)(A) and (B).

Respondent introduced evidence to prove that petitioner was required to file Federal income tax returns for 2003 and 2004, that petitioner did not file returns for 2003 and 2004, and that petitioner did not make estimated tax payments for 2003 and 2004.  However, respondent did not introduce evidence sufficient to prove that petitioner had an obligation to make any estimated tax payments for 2003.  See Wheeler v. Commissioner, 127 T.C. at 211.  Specifically, respondent's burden of production under section 7491(c) required him to produce sufficient

[*15] evidence that petitioner had a required annual payment for 2003 under section 6654(d), and respondent failed to do so.

Instead, respondent produced a document attached to petitioner's notice of deficiency titled "EXPLANATION OF THE ESTIMATED TAX PENALTY". Among other things, it showed that: (1) petitioner's 2003 tax liability was $113,925, (2) 90% of that amount was $102,533, and (3) petitioner's prior year (2002) tax liability was zero. The document then determined that the smaller of (2) and (3) "(as adjusted)" was $102,533. No explanation was given of any adjustment that would account for that conclusion. We can only infer that respondent made an adjustment because petitioner failed to file a return for 2002. However, petitioner's account transcript for tax year 2002 (offered into evidence by respondent) indicates otherwise. Specifically, the account transcript indicates that petitioner filed a late return for 2002. Nevertheless, petitioner filed a return for 2002, before respondent issued a notice of deficiency, and the required annual payment for 2003 is limited to 100% of the tax shown on the 2002 return, i.e., zero. See Mendes v. Commissioner, 121 T.C. 308, 324 (2003). Accordingly, petitioner is not liable for an addition to tax under section 6654 for 2003.

Petitioner did not file a return for the 2004 tax year or for the 2003 tax year (the immediately preceding year), and he did not pay estimated tax in those years.

**[\*16]** Therefore, petitioner is liable for the addition to tax under section 6654 for 2004 calculated with respect to the required annual payment--90% of the tax due for that year.

To reflect the foregoing,

<u>An appropriate decision will be</u>

<u>entered</u>.